Calendar for Oral Argument. First case is Singh v. Ashcroft. Counsel? Thank you very much, Your Honors. Good morning. On behalf of Saptamsingh Girish Srin, basically I'd like to just state the reasons cited by the immigration judge. Why my client was not my client, as the facts clearly indicate, was a Sikh, a Sikh activist who was a member of an Indian legal political party who was arrested at least seven times in a span period of about eight years. The court, that is the immigration judge, was unable to find any contradiction in that testimony. He entered the United States in 1998 with inspection and a visa he had obtained at a U.S. embassy in New Delhi. For some reason, the judge put a specter over my client's and clouded his claim by alleging and relying on a report that had been provided to the State Department five years earlier and misstating the report's date of 1999 when the actual date was 1994 to state that individuals claiming to be Sikhs were making false claims. There was no identity crisis, no identity issue in this claim. The IJ, the immigration judge, then tried to make an issue about my client's religion. There had been no basis to question his religion. He had provided photographs showing his youth and participation in India in his religion. In the United States visa, it also established he was a practicing Sikh. For some reason, the immigration judge found that wasn't sufficient and based on an LA News Time article, started questioning his faith without any expertise or any reasons to question his faith. The last reason the judge found my client's testimony not to be credible, that he kept asking the trial attorney on cross-examination to clarify or he said, excuse me. Those examples can be found on the transcript on pages 00013. My client had an eight-year education in a village in Punjab. He was speaking through an interpreter and certain words weren't translated which he could comprehend. He didn't know what the word authorities meant. He asked for clarification. That does not establish that my client wasn't credible or he was halting in his testimony. These are specific reasons that I have stated because the judge was unable to state any reason based on my client's demeanor or any answer he gave on cross-examination why my client was not stating or was based on his demeanor that he was giving halting testimony. The last reason the immigration judge cited was that my client had stated at his interview and at his testimony that when he was arrested, he was dragged in a police jeep. That is not an inconsistency. That was a fact. He established with injuries on his body which he told the judge. And case law in this circuit has clearly stated omissions without any other reason of dishonesty are not sufficient to show adverse credibility. I would like to keep the rest of my time for rebuttal until any judges have questions. Let me ask you on that last point. Yes, Your Honor. Wouldn't the act of being dragged behind a jeep be so exceptional that you could fairly anticipate that it would be identified? Yes, Your Honor, it would be. He said he stated it at his interview. He hadn't prepared his application. His application was prepared by someone else. He speaks in a different language. He doesn't comprehend the English language. He had already told the asylum officer. Unfortunately, the respondent's attorney does not provide any reason why not to believe him. There are no asylum. The asylum officer never testified. There are no notes of the asylum officer to contradict what my client has stated. My client stated at all times he swore to that testimony. Could I ask you about his knowledge of the Sikh religion? He was president of his temple, wasn't he? He was president of his temple in India. He showed photographs of him in India. He has a U.S. visa showing he's a practicing Sikh. Why would he think that one of the five symbols was the turban and not the knife? He had originally stated one of the five was the knife. And at the end, when he was re-asked that, he didn't mention the knife. He mentioned only four, Your Honor. He mentioned the turban. He mentioned the turban instead of his hair. That's what was translated. That is correct. What should the translation have been? I assume, it's an assumption on my part, that his hair was under his turban, and that's why he wears a turban, because he's meant to have uncut hair. And you say earlier he did list the knife. He did list the knife, and that's what the judge said, that an R in the testimony you had stated earlier, you had mentioned the knife, and now you've only mentioned four. I see. And let me ask you on the demeanor. The judge says he hesitates. Now, that's something that's not going to appear on the face of the record. It's only if you're sitting there watching him, you can say whether he hesitates or not. Well, he didn't hesitate, and that's why I provided you. How do you know? I was present. You were present. Yes, Your Honor. And I'm providing you specific transcript records. He asks questions where I've given you. On page 000113 and on 000115, the question is asked by trial counsel, you said you attended, and that would be the equivalent of the church in the United States. Is there a specific name? He says, excuse me, he doesn't understand the question. And counsel for the government understands he's not understanding the question, so she rephrases it, and he answers it. So when he's trying to protect himself by asking her what question she's asking, he's not in any manner stating, I'm not going to testify.  Let me ask you one other question, because I've had a number of cases involving Sikhs. I understand. And I've come to understand that every male Sikh carries the name Singh, and there is another name that's the family name besides Singh. Now, does he have another name? He has no other name. That is basically, I don't want to be an expert on Sikhism, but based on India, it's based on the caste, and the name reflects a caste name. But I believe it's true that in every other case involving a Sikh I've seen, and what I've read about them, is that Sikhs automatically get Singh as part of their name, but then they have another name. Well, that's based on the religion to do away with the caste system. It means lion. So it signifies... But then they have another name. What I'm asking you is why he doesn't have another name. I'm disagreeing with you, and I'm stating, Your Honor, that basically some of them may want to keep the caste name, some of them don't. If I could keep two minutes forward. Thank you very much. I'm sorry. Is there another question? No, thanks. Thank you. Good morning, Your Honors, Counsel. My name is Margaret Taylor. I represent the government in this matter. Contrary to what my colleague said, the immigration judge's decision was supported by specific and cogent reasons, and I would like to discuss some of them with you this morning. The immigration judge based his adverse credibility finding of Mr. Satnam Singh on several inconsistencies, including one that was raised by Judge Clifton, I believe, which was the omission in the asylum application of a pivotal and important event. Now, Mrs., can I interrupt you for a moment? Of course. The reliance on the application, I think, has proved over the years mistaken, because they're done very sloppily, they often somehow don't get very much attention by whoever does that sort of work, and I think this Court has indicated more than once that trying to find an inconsistency between the application and the testimony is easy, but it's not much of a badge of, so please don't rely very much on that. Don't make that the height of your argument anyway. Well, it's not the height, Your Honor, but before I move on from it, I'd like to explain. You understand my sense of that? I understand it, Your Honor. But this particular application was done with great deal of care. It's very articulate and fluid. And furthermore, at the beginning of the immigration judge hearing, the immigration judge asked Mr. Cerin and his client several times whether they wanted to amend that I-589, and they said no, that it was complete and true. But that goes on at every hearing. They always ask, is this your application, is it correct, have you reviewed it, and that happens every time. In all of the cases in which we've said that the omission of something from an application is not very important, that also happened. Well, Your Honor, I think some of your case law, the Bondaria case, for example, talks about omissions, but it talks about omissions of detail. There has been a subsequent decision, which I did not discover seven days in advance of the argument, so I wasn't able to 28J it before the argument, that is Alvarez-Santos. And I will 28J it after the argument. It's found at 332 F. 3rd 1245. And in that one, actually, this Court did support an adverse credibility finding that relied on an omission of a dramatical pivotal event, such as this Jeep event, where Mr. Singh testified that he was attached by a rope to a Jeep and dragged for several yards and had scars and his body was ripped open, and that wasn't significant enough for him to put on the I-589. Did the government ask to see the scars? What happened was that at the hearing, Mr. Singh offered to show the scars, and the government said no, thank you. Why did you say no, thank you? Excuse me? Why did the government say no, thank you? Presumably they thought that, you know, I'm only speculating because I was not at the immigration judge hearing. Well, that's okay. You're here for the government. I am. You can speculate on why the government would not be interested in a man saying, I have scars on my back from being tortured or dragged through the street, and I'm happy to show them to you. And the government says, well, we don't care. Should we assume that he did have those scars? I think you can assume he had scars. I just don't think you can assume that he had them for the reasons he said. Okay. So that's the reason, because you concede that he does have scars on his back, which he says come from that. I haven't seen his back, Your Honor, but I presume he has scars. No, I know you haven't, but you concede that he has the scars. I concede that he may have scars. No, not that he may have. You weren't interested in the scars, you, the government, because you said it didn't matter. You're willing to assume he has scars. Willing to assume is correct, yes. Okay. Now, moving right along, since Judge Newman doesn't want to focus exclusively on the inconsistencies with the I-589, there was a severe implausibility problem in this case. Mr. Singh had testified that he had been a member and active in a very orthodox sect of the Sikh movement, that he had been a leader, a secretary, just one year after he became a member, and then he was president of his gurdwara, which I understand is the village organization of the Sikh, and was elected to that, and even though he was such a devoted adherent of the Sikh religion, when he was asked about the Sikh symbols, not only, as was mentioned earlier, could he not accurately name the five Sikh symbols. Well, now, when you say he can't accurately describe what these are, you mean he couldn't do it in the same way the website the government relied on did it? There was no expert who testified as to what the meanings were. He was not only an expert. These were not differences of nuance, Your Honor. Who was not an expert? I said, was there an expert who told us what the meaning of each of these symbols is? There is a document in the record. It was a website. That it was accepted as part of the record. Accepted by whom? By the immigration judge. Over the objection of his lawyer, who said that's not necessarily the correct meaning, right? I don't think there was anything in the record that said those weren't the correct meanings. The counsel objected because he didn't want that. He didn't want it to be compared to that website. He wanted an expert who would testify to what the meanings really are, not one website. Well, Your Honor, the burden of proof is the aliens. And the alien did not provide an expert to buttress. Wasn't that website introduced only at the closing argument by the government? Well, Your Honor, it was introduced at that point. So what opportunity did he have to rebut it? He had an opportunity if he thought there was a problem with it to make a motion to reopen or to reconsider. And wasn't it accepted only for background? You know, Your Honor, I really can't answer that question. Well, I think I can. It was just for background. Uh-huh. So why can it be relied on? Background is different from using it as a test of credibility. Well, Your Honor, I don't think that it was used as a test of credibility in terms of Mr. Singh's religion. It was used in terms of he had said that he was a leader in this religion. We understand that. You told us that. You're using what are you using this website for? You're using it to say that he was lying when he said or ignorant when he described what these signs were. And you're basing it on what should be evidence in the record. It is evidence in the record. It's background. What does that mean that it's introduced only for background? That means not for the truth of what it asserts. Well, Your Honor, I cannot imagine that even on a website that the bracelet, they would say, is a reminder to refrain from evil deeds. And Mr. Singh said it's a shield to keep away a knife attack. Would you be surprised to find out that there are other websites that indeed give a reference sort of similar to his? And if you look, you're going to find them. There is nothing like that in the record. No, there's nothing like that in the record, including your website, which is not in the record for the truth of what it asserts. But the background, whatever that means. Well, Your Honor, it's Mr. Singh's burden to show that he is. He did. He testified. He said what they meant meant. And we have no reason to disbelieve him as far as I can see in the record. I mean, you may be a great expert on what Singh, on what Sikh symbols are, but the record's supposed to be. And the record doesn't contain any evidence other than Mr. Singh's testimony, except some background website. Well, Your Honor, to me, it's as if I were a psychiatrist and someone asked me, who is Mr. Freud? And I said, he is an expert. He's an Olympic swimmer. He's famous for being an Olympic swimmer. That's how close these descriptions of the Sikh symbols are. And the immigration judge had a right to rely on those. Let me read to you from another website that makes reference to the kara provides protection to the raised arm. And during a fight, the kara protects the arm that uses the sword. Your Honor, that's not in the record. Well, I know it's not in the record, but I don't think your version is in the record either, except his background. There was no expert that testified with regard to Sikhism. And with regard to the burden, the issue here is credibility. I don't think people ordinarily come in expecting to prove the tenets of their faith. He was asked that as a way of testing his credibility. But I don't know that he's expected to say that every version of Sikhism has this particular tenet of faith. We're trying to find out whether it's credible or not. If it turns out that, in fact, what he said can be corroborated from other sources as being a legitimate take on Sikhism, what's the basis for saying he's not credible? Then that should have been what Mr. Singh put into the record. Well, can I ask you another question? Since you've bogged down on that one, you heard opposing counsel say that he did testify as to the knife earlier. Do you dispute that? He did. He did testify. His testimony changed about the five Sikh symbols. Changed. There are different ways of approaching it. I mean, you ask somebody the symbols of Christianity, what would they say? Quite a variety of Judaism. Quite a variety. You can't expect somebody to, unless you've got an expert as to what orthodoxy is, trying to test whether he's absolutely orthodox. It's really a rather futile effort. Well, Your Honor, again, the government's position is that Mr. Singh, you know, if he had said, well, he sometimes, you know, participated in Sikh events, it would have been one thing. But in this case where he said he was, he was, oh, I see my time is up. There was one more point, if I could make it, the demeanor reliance of the immigration judge as this Court has held in Singh Court. His, and it came up in the opening argument. That's a legitimate place to put reliance of adverse credibility. And there's no, there are no stage directions in the record. So we know when he hesitated and halted. In some. Well, but the law is that there have to, can't just be generalized statements that he's halting or not specific or leaving out things. Or you've got to identify the specific times where he is evasive or contradictory. Well, Your Honor, in the, in the decision of Singh Kaur, actually, what the immigration judge had said was that the, that the alien was basically jumping out of his seat. And there was no indication that he said, well, he jumped out of his seat at page AR1113. Well, he could have said when the record was being made, let me the record note that the alien is jumping out of his seat. Then we would have had a record. Well, that was in Singh Kaur where, where this court upheld the adverse credibility findings. So this one is, is, is, is just as good as the one in Singh Kaur. He said that he asked questions when he heard the testimony. That's actually what my colleague said. That was not a basis of the judges. That's not an immigration decision. So his only statement was that he was hesitated to answer questions. Hesitating, halting, that he had been very fluid during direct, but not during practical. Maybe his own lawyer asked questions more clearly than the government. And he could answer them directly. Well, as. Whereas he didn't understand the government's convoluted questions. Is that possible? I don't think so. In Singh Kaur, this court held that an immigration judge hears so many cross-exes that he can, he or she can distinguish between a cross-ex that is just nerves and a cross-ex that, that shows adverse credibility. Well, I don't think we could. If that's what that holds, I don't think we could do that without going in bank to take care of the other cases that say they can't be general statements of lack of credibility without pointing to the places in the record. So we'll have to look at that. All right. Your Honor, are there more questions? All right. Thank you very much. Do you know whether this is the same immigration judge who was in the case? It's not reported. It was an unreported case where the judge cross-examined the witness about the Sikh religion. And the panel was rather critical of the way he inquired into the. Are you familiar with the other case? It's an unpublished. I know. Your Honor, I don't know the case. I don't know whether it's the same judge or not. All right. Thank you. Thank you. Thank you very much. Unfortunately, I don't see it anywhere in the judge's decision that he said my client jumped out of his seat. Now, that's who's talking about the other case where. I'm sorry. They didn't need to point to specific places in the record. What you have over here basically are reasons by a judge who has found my client to be testifying credibly over a seven-year period, over multiple arrests, to find reasons why he's not credible. There's no way any reasonable person could dispute that. He cannot find any contradiction in anything my client testifies. My client has provided a letter, a passport, and a birth certificate. There was no reason not to dispute his testimony, and I ask this Court, please, to vacate the BIA order, which basically upheld the immigration judge without any review, and allow my client and find him prima facie eligible for asylum. Thank you. Thank you, counsel. Case test argued will be submitted. The next case on the calendar for argument.
judges: Reinhardt, Noonan, Clifton